UNITED STATES OF AMERICA
DISTRICT COURT OF THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVIN PORTER

     Plaintiff,

                                       Case No. 2:26-cv-12655

v.

                                       Hon.

CAJUN SEAFOOD CANTON LLC,
d/b/a HOOK & REEL CAJUN
SEAFOOD & BAR, and SOPHIE WANG,
individually,

     Defendants.

---

Attorneys for Plaintiff:
Nicholas Roumel (P37056)
Charles Widmaier (P88432)
Zainab Bhindarwala (IL 6348872)
*Roumel Law*
4101 Thornoaks Dr.
Ann Arbor MI 48104
(734) 645-7507
*nick@roumel-law.com*
*charlie@roumel-law.com*
*zainab@roumel-law.com*

---

**COMPLAINT AND JURY DEMAND**

Plaintiff Devin Porter was an experienced server who quickly became one of Hook & Reel's strongest performers. He was also openly gay, something his manager, Sophie Wang, made clear she viewed as a problem. Wang repeatedly

grabbed Mr. Porter's buttocks, told him to be "less gay," and pressured him to change how he presented himself to customers. When Mr. Porter finally told Wang to stop touching him and objected to her discriminatory treatment, Wang admitted what she had done. Hook & Reel fired Mr. Porter the very next morning through an email from Wang, offering a list of pretextual excuses for its decision.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Devin Porter ("Mr. Porter") is a gay man who resides in Belleville, Wayne County, Michigan.

2. Defendant Cajun Seafood Canton LLC does business as Hook & Reel Cajun Seafood & Bar ("Hook & Reel").

3. Hook & Reel operates a restaurant at 39605 Ford Road in Canton, Wayne County, Michigan.

4. At all relevant times, Hook & Reel employed fifteen or more employees and was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

5. Defendant Sophie Wang was Hook & Reel's manager and Mr. Porter's direct supervisor.

6. Wang controlled employees' schedules, enforced workplace rules, disciplined employees, and made termination decisions on Hook & Reel's behalf.

2

7.     Wang acted as Hook & Reel's agent within the meaning of MCL 37.2201(a).

8.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 because Mr. Porter asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

9.     This Court has supplemental jurisdiction over Mr. Porter's Michigan claims under 28 U.S.C. § 1367 because those claims arise from the same events.

10.    Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the events giving rise to this lawsuit occurred within this District.

11.    Mr. Porter filed a timely charge of discrimination with the Equal Employment Opportunity Commission against Hook & Reel on June 2, 2025.

12.    The EEOC issued Mr. Porter a Determination and Notice of Rights on May 4, 2026.

13.    Mr. Porter received the Notice of Rights and filed this lawsuit within ninety days of receipt.

## FACTUAL ALLEGATIONS

### Mr. Porter Was A Successful Hook & Reel Server

14.  Mr. Porter has worked in the restaurant industry for the past sixteen years, beginning when he was seventeen years old.

15.  Hook & Reel hired Mr. Porter as a server on March 11, 2025.

16.  Mr. Porter was experienced, professional, friendly, and outgoing. Mr. Porter quickly became one of Hook & Reel's strongest servers, generating strong sales and receiving favorable customer reviews.

17.  Mr. Porter's coworkers regarded him as professional, experienced, friendly, and outgoing. His coworker Posha Triplett Tucker specifically described him as "professional, experienced, and able to stand up for himself."

18.  Throughout his time at Hook & Reel, Mr. Porter reported to his manager, Defendant Sophie Wang.

### Wang Repeatedly Grabs Mr. Porter's Buttocks

19.  From the time Mr. Porter began working at Hook & Reel, Sophie Wang worked to make his life miserable.

20.  Wang would regularly place her hands on Mr. Porter's buttocks, squeeze them, shake them, and pull him toward her by his buttocks.

21.  Mr. Porter never consented to Wang touching his buttocks.

4

22. The contact was sexual, unwelcome, humiliating, and deeply upsetting to Mr. Porter.

23. Mr. Porter's coworker Posha Triplett Tucker personally witnessed Wang grab Mr. Porter's buttocks.

24. After another incident where Wang grabbed his buttocks, Mr. Porter approached coworker Ronishia McKnight, who stated that Mr. Porter looked uncomfortable and unsure how to respond.

**Wang Tells Mr. Porter To Be "Less Gay"**

25. Beyond the unwelcome sexual touching, Wang further targeted Mr. Porter because of his sexual orientation and because he did not conform to her expectations about how a man should act.

26. Wang directly told Mr. Porter to be "less gay."

27. She also told him that he needed to know "when to turn it off."

28. Wang also criticized Mr. Porter's appearance, including his lips and teeth, in front of others.

29. Beyond these statements and the touching, Wang also assigned Mr. Porter fewer tables because he was gay. Wang would not seat male customers in Mr. Porter's section because she believed they would not want a gay male server.

30. Wang's conduct made clear that Mr. Porter's sexual orientation and failure to conform to her gender stereotypes were unwelcome at Hook & Reel.

5

## Mr. Porter Confronts Wang

31.     On the morning of April 26, 2025, Mr. Porter confronted Wang about her conduct.

32.     Mr. Porter explained that her touching his buttocks made him "feel so uncomfortable."

33.     When Mr. Porter told Wang that she liked to squeeze his buttocks, Wang admitted her conduct and responded: "All right, I should stop doing that shit. I gotcha."

34.     Mr. Porter again made it clear that Wang's touching was "not okay" with him.

35.     Mr. Porter also confronted Wang over her discriminatory treatment of him as a gay man by not seating male customers in his section.

36.     Again, Wang did not deny these actions. She instead said, "Okay. You know how to turn it on and off, be professional?"

37.     Mr. Porter told Wang that he did not need to "turn it off," explaining: "That's me. They love it – like I said."

38.     Wang replied, "Just serve professionally."

39.     Mr. Porter responded that he always acted professionally but would not hide who he was, explaining: "I'm just me. I'm flamboyant. I'm Devin. The people love me."

40.     Mr. Porter made it clear to Wang that he was objecting to her sexual touching and discriminatory treatment.

41.     Wang told other servers about her conversation with Mr. Porter. She expressed to Ronishia McKnight that she had to "walk on eggshells" around Mr. Porter.

42.     After Mr. Porter worked a double shift that same day, Wang told him as he left, "Good job today, bring me a latte tomorrow."

### Hook & Reel Fired Mr. Porter the Next Morning

43.     The day after Mr. Porter confronted Wang about her discriminatory treatment of him, Defendants fired him.

44.     At 11:40 a.m. on April 27, 2025, Wang emailed Mr. Porter that his employment was terminated effective immediately.

45.     The termination email offered several pretextual reasons for Mr. Porter's termination. It accused him of engaging in personal video calls, watching television, and vaping during work.

46.     Other employees commonly used their phones and watched television when the restaurant was slow. Additionally, employees commonly vaped at work, and at least one employee regularly made TikTok videos on her phone during work without being fired.

47. Hook & Reel terminated Mr. Porter even though he had never received any discipline for the alleged conduct identified in the termination email.

48. The termination notice also accused Mr. Porter of processing a credit card tip without obtaining a customer's signature.

49. Wang enforced her "no signature, no tip" rule inconsistently and often withheld employees' tips when a customer forgot to sign a receipt.

50. The receipt records later offered by Hook & Reel did not substantiate the specific April 25, 2026 transaction identified in the termination notice.

51. The termination notice accused Mr. Porter of making "false and damaging statements" about the restaurant on April 26, 2026.

52. April 26, 2026 was the day Mr. Porter told Wang to stop grabbing his buttocks and opposed her discriminatory treatment.

53. Mr. Porter did not make false or damaging statements about Hook & Reel.

54. The reasons Hook & Reel cited for Mr. Porter's termination were false, selectively enforced, tolerated when committed by other employees, or had never previously warranted termination. Hook & Reel used those allegations as a pretext to fire Mr. Porter one day after he confronted Wang about her discriminatory conduct.

55.    Hook & Reel treated other employees more leniently for more serious conduct.

56.    For example, Wang retained an employee named Alyssa after she was cited for serving alcohol to an underage police decoy.

57.    Hook & Reel fired Mr. Porter because he is gay, because he did not conform to Wang's gender stereotypes, and because he objected to Wang's sexual harassment and discrimination.

## LEGAL ALLEGATIONS

## COUNT I

## TITLE VII—SEX-BASED HOSTILE WORK ENVIRONMENT

### (Against Hook & Reel)

58.    Title VII prohibits discrimination in the terms, conditions, and privileges of employment because of sex. 42 U.S.C. § 2000e-2(a).

59.    Wang subjected Mr. Porter to repeated and unwelcome sexual contact, including grabbing, squeezing, and shaking his buttocks and pulling him toward her by his buttocks.

60.    Wang also harassed Mr. Porter because he is gay and because he did not conform to her expectations about how a man should look and act.

9

61.     Among other things, Wang told Mr. Porter to be "less gay," told him to "turn it off," and expressed reluctance to seat male customers in his section because she believed they would not want a gay male server.

62.     Wang's conduct was severe, pervasive, or both, and altered the conditions of Mr. Porter's employment by creating an intimidating, hostile, and offensive working environment.

63.     Wang was Mr. Porter's manager and exercised supervisory authority over him on Hook & Reel's behalf.

64.     Hook & Reel is liable for Wang's conduct and the resulting harm.

65.     As a direct and proximate result of Hook & Reel's unlawful conduct, Mr. Porter suffered economic and noneconomic damages.

## COUNT II

## TITLE VII—SEX DISCRIMINATION

### (Against Hook & Reel)

66.     Title VII prohibits an employer from terminating or otherwise discriminating against an employee because of sex. 42 U.S.C. § 2000e-2(a).

67.     Discrimination because of an employee's sexual orientation or failure to conform to gender stereotypes is discrimination because of sex.

68.     Mr. Porter is gay and did not conform to Wang's expectations about how a man should present.

69.     Mr. Porter was qualified for his position and successfully performed his work as a server.

70.     Wang nevertheless told Mr. Porter to be "less gay," told him to "turn it off," restricted male customers from his section, and subjected him to unwelcome sexual contact.

71.     Hook & Reel terminated Mr. Porter because of his sex, sexual orientation, and failure to conform to Wang's gender stereotypes.

72.     The reasons provided for Mr. Porter's termination were false, pretextual, tolerated when committed by other employees, selectively enforced, or had not previously resulted in any warning or documented discipline.

73.     As a direct and proximate result of Hook & Reel's unlawful discrimination, Mr. Porter suffered economic and noneconomic damages.

## COUNT III

## TITLE VII—RETALIATION

### (Against Hook & Reel)

74.     Title VII prohibits an employer from retaliating against an employee because he opposed conduct prohibited by Title VII. 42 U.S.C. § 2000e-3(a).

75. On April 26, 2025, Mr. Porter opposed Wang's sexual touching, sexual harassment, sexual-orientation discrimination, and sex stereotyping.

76. Wang knew about Mr. Porter's protected activity because Mr. Porter complained directly to her.

77. Wang admitted that she had touched Mr. Porter's buttocks and stated: "I should stop doing that shit."

78. After Mr. Porter complained, Wang's demeanor toward him changed.

79. She discussed his complaint with other employees and stated that Mr. Porter's objections left her feeling as though she had to "walk on eggshells."

80. Hook & Reel terminated Mr. Porter the following morning.

81. The extraordinary temporal proximity between Mr. Porter's complaint and his termination, Wang's response to the complaint, the reference to Mr. Porter's April 26, 2026 statements in the termination notice, and Hook & Reel's false and selectively enforced reasons demonstrate that Mr. Porter was terminated because of his protected activity.

82. Mr. Porter's protected activity was a but-for cause of his termination.

83. As a direct and proximate result of Hook & Reel's retaliation, Mr. Porter suffered economic and noneconomic damages.

## COUNT IV

## ELCRA—SEX-BASED HOSTILE WORK ENVIRONMENT

### (Against All Defendants)

84.     The Elliott-Larsen Civil Rights Act prohibits discrimination in the terms, conditions, and privileges of employment because of sex and sexual orientation. MCL 37.2202(1)(a).

85.     Wang subjected Mr. Porter to repeated and unwelcome sexual contact, including grabbing, squeezing, and shaking his buttocks, and pulling him toward her by his buttocks.

86.     Wang also harassed Mr. Porter because he is gay and because he did not conform to her expectations about how a man should present.

87.     Among other things, Wang told Mr. Porter to be "less gay," told him to "turn it off," and expressed reluctance to seat male customers in his section because she believed they would not want a gay male server.

88.     Wang's conduct was severe, pervasive, or both, and substantially interfered with Mr. Porter's employment by creating an intimidating, hostile, and offensive working environment.

89.     Wang committed this harassment while acting as Hook & Reel's manager and agent.

13

90.     Hook & Reel and Wang are liable under ELCRA for the harassment and resulting harm.

91.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Porter suffered economic and noneconomic damages.

## COUNT V

## ELCRA—SEX AND SEXUAL-ORIENTATION DISCRIMINATION

### (Against All Defendants)

92.     ELCRA prohibits an employer or its agent from terminating or otherwise discriminating against an employee because of sex or sexual orientation. MCL 37.2202(1)(a).

93.     Mr. Porter is gay and did not conform to Wang's expectations about how a man should present.

94.     Mr. Porter was qualified for his position and successfully performed his work as a server.

95.     Wang nevertheless told Mr. Porter to be "less gay," told him to "turn it off," prevented him from serving male customers, and subjected him to unwelcome sexual contact.

96.     Defendants terminated Mr. Porter because of his sex, sexual orientation, and failure to conform to Wang's gender stereotypes.

14

97. The reasons provided for Mr. Porter's termination were false, pretextual, tolerated when committed by other employees, selectively enforced, or had not previously resulted in any warning or documented discipline.

98. As a direct and proximate result of Defendants' unlawful discrimination, Mr. Porter suffered economic and noneconomic damages.

## COUNT VI

## ELCRA—RETALIATION

### (Against All Defendants)

99. ELCRA prohibits retaliation against a person because that person opposed a violation of the Act. MCL 37.2701(a).

100. On April 26, 2025, Mr. Porter opposed Wang's sexual touching, sexual harassment, sexual-orientation discrimination, and sex stereotyping.

101. Wang knew about Mr. Porter's protected activity because Mr. Porter complained directly to her.

102. Wang admitted that she had touched Mr. Porter's buttocks and stated: "I should stop doing that shit."

103. After Mr. Porter complained, Wang's demeanor toward him changed. She discussed his complaint with other employees and stated that Mr. Porter's objections left her feeling as though she had to "walk on eggshells."

104. Defendants terminated Mr. Porter the following morning.

105. The extraordinary temporal proximity between Mr. Porter's complaint and his termination, Wang's response to the complaint, the reference to Mr. Porter's April 26, 2026 statements in the termination notice, and Defendants' false and selectively enforced reasons demonstrate that Mr. Porter was terminated because of his protected activity.

106. As a direct and proximate result of Defendants' retaliation, Mr. Porter suffered economic and noneconomic damages.

## COUNT VII

## BATTERY

### (Against Wang)

107. A battery is an intentional, unconsented, and harmful or offensive touching of another person.

108. Wang intentionally grabbed, squeezed, and shook Mr. Porter's buttocks and pulled him toward her by his buttocks multiple times.

109. Mr. Porter did not consent to Wang's touching.

110. Wang's sexual touching was harmful and offensive.

111. Wang's conduct was intentional, willful, and in reckless disregard of Mr. Porter's rights.

16

112. As a direct and proximate result of Wang's repeated batteries, Mr. Porter suffered humiliation, emotional distress, mental anguish, and other damages.

## DAMAGES

113. As a direct and proximate result of Defendants' unlawful conduct, Mr. Porter has suffered and will continue to suffer economic and non-economic damages including, but not limited to, lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

114. Defendants acted intentionally, maliciously, and with reckless indifference to Mr. Porter's protected rights, supporting punitive damages to the extent permitted by law.

115. Mr. Porter is entitled to statutory interest, attorney fees, costs, and all other relief authorized by Title VII, ELCRA, and Michigan law.

## JURY DEMAND

Mr. Porter demands a trial by jury.

## RELIEF REQUESTED

*W H E R E F O R E*, Plaintiff Devin Porter respectfully requests that this Court enter judgment in his favor and against Defendants and award:

    a. Economic damages including lost wages;

17

b.   Non-economic damages for emotional distress, embarrassment, and humiliation;

c.   Exemplary and punitive damages as permitted by law;

d.   Costs, interest, and reasonable attorney fees;

e.   All other relief as justice and equity require.


Respectfully submitted,

**ROUMEL LAW**

*/s/ Charles Widmaier*

Charles Widmaier


*/s/ Zainab Bhindarwala*

Zainab Bhindarwala

July 31, 2026                              Attorneys for Plaintiff


18